IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| TIMOTHY MOYNIHAN | * | |
| Plaintiff | * | |
| v. | * | |
| PROVIDIAN FINANCIAL CORP. | * | Civil Action No. JFM-02-CV-2795 |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now Comes Timothy Moynihan, plaintiff, by and through his attorneys Darren Margolis and Bierer & Margolis, P.A., to move for summary judgment, and for cause states:

As set forth in the attached memorandum of law, there are no genuine disputes of material fact and the plaintiff is entitled to judgment as a matter of law.

/S/
_____
Darren Margolis #023806
Bierer & Margolis
926 St. Paul Street
Baltimore, MD 21202-2045
(410) 539-5855
Attorney for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this motion was sent via prepaid, first class mail, on March 11, 2003 to: J. Preston Turner, Pope & Hughes, 29 W. Susquehanna Avenue, Suite 110, Towson, MD 21204.

/S/
_____
Darren Margolis

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| TIMOTHY MOYNIHAN | * |
|     Plaintiff | * |
| v. | * |
| PROVIDIAN FINANCIAL CORP. | *    Civil Action No. JFM-02-CV-2795 |
|     Defendant | * |
| | * |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

As stated in the motion filed by Providian, the parties have stipulated to most of the material facts of this case, and Moynihan hereby adopts and incorporates herein by reference the Joint Statement of Facts and supporting documentation filed by Providian. Some facts and supporting documents not contained in Providian's motion are supplied here. Based upon these facts and the applicable law, Moynihan is entitled to summary judgment in his favor.

**I. THE "CLAIMS AND DEFENSES" PROVISION OF 15 USC § 1666i.**

Under the Fair Credit Billing Act, consumers can shift the risk of loss of credit card transactions to their issuing banks. *In re Brown Castle Ltd.* 1980 Bankr. LEXIS 4205 (1980). Under the provisions of 15 USC § 1666i (a), consumers can assert against their credit card issuer any claim or defense (except tort claims) that they have against the merchant, subject to the following requirements: (1) the cardholder has made a good faith attempt to resolve the dispute with the merchant; (2) the amount of the transaction

exceeds $50.00; (3) the place where the initial transaction occurred was in the same state as the mailing address of the cardholder, or within 100 miles from such address. In addition, under 15 USC § 1666i (b), the amount of the claims or defenses asserted by the cardholder may not exceed the amount of credit outstanding with respect to the transaction at the time the cardholder first notified the credit card issuer of the dispute.

In the instant case, the amount of the transaction exceeds $50.00. Additionally, there is no dispute that at the time he first notified the cardholder of his dispute with CyberRebate, the charge was still outstanding. As Moynihan has satisfied the remaining requirements of the statute, he is entitled to summary judgment in his favor.

**1. Good faith attempt to resolve with merchant.**

The stipulated facts set forth in Providian's Motion for Summary Judgment reflect that on May 5, 2001, Moynihan entered into the initial transaction with CyberRebate, and that eleven days later, CyberRebate announced that it had filed for bankruptcy. (JSOF par. 4, 8). As a result of the bankruptcy filing, the CyberRebate website, previously interactive, became non-functional. A person who connected with the CyberRebate website saw only the announcements that bankruptcy had been filed and that operations are suspended. An update to the site in the first week of June advised users that the company was not accepting returns of merchandise. The site referred users to the website for the bankruptcy court for further information. (See Exhibit A).

Immediately after becoming aware of the bankruptcy filing, Moynihan attempted to return the merchandise to CyberRebate. By letter of May 17, 2001, he requested that

he be allowed to return the merchandise by the delivery method of their choice. However, he received no response to his letter. (See Exhibit B).

Although CyberRebate has been in bankruptcy since May of 2001, Moynihan has not yet received notice to file a proof of claim. Indeed, a review of the website of the bankruptcy court reveals that a procedure for filing proofs of claim have yet to be established and that any proofs of claim that are filed before the procedures are established will be discarded. (See Exhibit C). However, even if Moynihan could file a proof of claim form he is not required to do so. The Official Federal Reserve Board Commentary to the regulation implementing 15 USC § 1666i, C.F.R. § 226.12, states as follows:

> Resolution with merchant. The consumer must have tried to resolve the dispute with the merchant. This does not require any special procedures or correspondence between them and is a matter for factual determination in each case. The consumer is not required to seek satisfaction from the manufacturer of the goods involved. **When the merchant is in bankruptcy proceedings, the consumer is not required to file a proof of claim in those proceedings.** 12 C.F.R. Ch. II pt. 226, Supp. 1 par. 12 (C)(3)(I).

Accordingly, Moynihan was prevented from resolving the dispute with CyberRebate. Its website ceased operations and it warned consumers that it would not accept returns of merchandise. CyberRebate made clear to its customers that their only relief would be through the bankruptcy court. Moynihan is neither able nor required to file a proof of claim at this time. Even if he filed his proof of claim, it would be additional months or years before he received any payment, and CyberRebate has long

since defaulted on its key promise to provide rebates within 10-14 weeks of the transaction.

**2. Location of the transaction.**

In this case, the contract was made at Moynihan's home in Lusby, Maryland. As described in the attached affidavit, a customer shopping on the CyberRebate website clicks on icons of products he wishes to purchase. Once he has added the desired items to his virtual shopping cart, he proceeds to a series of screens where he is prompted to enter his name, address, credit card information, shipping destination, etc. Finally, he is presented with a screen which lists his items, their prices, and the total that will be charged to his credit card. On that screen is a "button" which he is required to click to accept the terms and purchase the merchandise. Only **after** the button is clicked is the purchase made, and a screen then appears thanking him for his purchase.

The credit card account agreement between Moynihan and Providian provides that the account is to be governed by New Hampshire law. (Def. Ex. J).[1] New Hampshire, like Maryland, follows the principle of "*lex loci contractus.*" *See Ct. Valley Lumber Co. v. Maine Central R.R.*, 103 A. 263, 265 (N.H.1918). The principle requires that contracts be construed under the law of the jurisdiction where the contract was made. A contract is considered to be made at the place where the last act necessary to create a binding contract was performed. *See Mallinckrodt, Inc. v. Whittaker M.A. Bioproducts*, Inc., 81

---

[1] Moynihan's Amended Complaint referenced portions of the Maryland Commercial Law Article. The parties have agreed that Moynihan will amend his complaint to cite the parallel New Hampshire statutes.

Md. App. 96, 103, 566 A.2d 1113, 1116 (1989), *citing Grain Dealers Mutual Ins. Co. v. Van Buskirk*, 241 Md. 58 (1965). In this case, the last act which created the binding contract was Moynihan's clicking on the button to accept the terms and purchase the products. Had Moynihan not clicked on the button, there would have been no agreement to purchase. CyberRebate, in taking Moynihan's information during the "check-out" process, manifested its intention to be bound upon Moynihan making the final click.

If the contract is viewed as a contract for the sale and delivery of goods to a specified location, then under New Hampshire law, title does not pass until the goods are delivered. See New Hampshire § 382-A:2-401 (2)(b) (2002) ("if the contract requires delivery at destination, title passes on tender there." The last act therefore occurs at the place of delivery, and this would be the place were the contract was made.

Therefore, under the principle of *lex loci contractus*, the last act to create a binding agreement occurred in Lusby, Maryland, either when Moynihan agreed to purchase the merchandise or when it was delivered to his doorstep. As the purchase of the items constituted the initial part of the transaction, and as Moynihan's home in Lusby is the same as the address on his credit card account, he has satisfied this requirement of 15 USC § 1666i.

## II. MOYNIHAN'S CLAIMS AND DEFENSES.

As set forth above, Moynihan can assert against Providian any claims or defenses he has against CyberRebate. Those claims, enumerated in the Amended Complaint, are:

**1. Breach of contract.**

Moynihan contracted to receive a 100% rebate within approximately 10-14 weeks of purchase. CyberRebate explicitly promoted the items as "FREE AFTER REBATE." The rebates meant a full refund of the purchase price and, as such, were a material term of the contract. Indeed, had the rebates not been promised, Moynihan would not have purchased the items at their inflated prices.

It is also important to realize that the rebates were being offered directly from CyberRebate rather than a manufacturer. In most situations, a rebate is offered by the manufacturer and is not the responsibility of the retail seller. In this case, however, the seller offered its own rebate and was therefore responsible for failing to provide it.

CyberRebate breached its contract with Moynihan in that it failed to provide the promised rebate within the 10-14 week period. Because CyberRebate filed for bankruptcy protection almost immediately after Moynihan's purchase, he was not allowed the opportunity to submit his rebates for processing.

Finally, CyberRebate promised that all merchandise had a 30 day money back guarantee. (Def. Ex. C.). Moynihan's request to return the merchandise was sent within that 30 day period but his request was not acknowledged. Subsequently, the posting on the CyberRebate web site confirmed that the company would not accept returns.

**2. Detrimental Reliance.**

In *Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 166, 674 A.2d 521, 532 (1996), the court, quoting the Restatement (Second) of Contracts, enumerated

the elements of a claim for detrimental reliance:

```
1. a clear and definite promise;
2. where the promisor has a reasonable expectation that
   the offer will induce action or forbearance on the part
   of the promisee;
3. which does induce actual and reasonable action or
   forbearance by the promisee;  and
4. causes a detriment which can only be avoided by the
   enforcement of the promise.
```

In the instant case, there was a clear and definite promise by CyberRebate that the items purchased by Moynihan would be "free after rebate" and that rebates would be provided within fourteen weeks of purchase. CyberRebate had a reasonable expectation that its offer to provide free after rebate merchandise would induce customers such as Moynihan to purchase the items at their inflated prices. Indeed, that was CyberRebate's business plan. (Def. Ex. C.). Further, Moynihan had made similar purchases from CyberRebate in the past and its habit in continually providing the rebates as promised further gave assurances to Moynihan that he could expect his rebates on this occasion as well. In reliance on the promise, Moynihan purchased the items. Moynihan's actions have now caused him a detriment in that, if he does not receive his rebate, he will have lost over a thousand dollars on goods which were priced excessively.

### 3. Uniform Commercial Code

New Hampshire § 382-A:2-610 (2002), provides, in part, as follows (emphasis added):

```
When either party repudiates the contract with
respect to a performance not yet due the loss of
which will substantially impair the value of the
contract to the other, the aggrieved party
```

> may...(b) **resort to any remedy for breach (Section 2-703 or Section 2-711**), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction.

And § 382-A:2-711 describes the remedy to which the buyer can resort:

> Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (Section 2-612), the buyer may cancel and whether or not he has done so may **in addition to recovering so much of the price as has been paid**...

Accordingly, under New Hampshire's UCC provisions, Moynihan has a claim against CyberRebate for damages. CyberRebate repudiated the contract "with respect to performance not yet due" in that it failed to make rebates available to Moynihan as promised. The "loss" of this performance "substantially impaired" the value of the contract since Moynihan expected to have ultimately received the goods for free, but now has paid a grossly inflated price. Therefore, he is entitled to recover the purchase price.

## CONCLUSION

Timothy Moynihan has satisfied the requirements for asserting his CyberRebate claims against Providian pursuant to 15 USC § 1666i. There are no disputes of material fact. Summary judgment should be entered in his favor for $1,499.83, the amount in which CyberRebate is indebted to him.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| TIMOTHY MOYNIHAN | * | |
| Plaintiff | * | |
| v. | * | |
| PROVIDIAN FINANCIAL CORP. | * | Civil Action No. JFM-02-CV-2795 |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I, TIMOTHY MOYNIHAN, AM OVER THE AGE OF 18 AND COMPETENT TO TESTIFY TO THE FOLLOWING MATTERS:

1. Upon discovering that CyberRebate had filed for bankruptcy on May 16, I tried to access their website.

2. Prior to the bankruptcy filing, CyberRebate's website was fully functional and interactive. It could be used to contact CyberRebate, check the status of rebate submissions, place orders, etc. After the bankruptcy filing, the site was not functional or interactive. The site would only display the message concerning the bankruptcy, which was updated twice within the next three weeks.

3. I contacted CyberRebate by letter on May 17, requesting to return the merchandise. However, that letter was not acknowledged by them. Subsequently, the June 4 posting on their website confirmed that they were not accepting returns.

4. The shopping experience at CyberRebate followed this sequence: upon logging on, a user can do a search for a category of items or for specific items. The user can then click on an icon of an item and have it deposited into his virtual shopping cart. When ready to purchase, CyberRebate takes the user through a series of screens in which it collects pertinent data on billing and shipping. After it has collected all the data, a final screen is displayed listing the items selected and confirming the information provided.

At that point, the user must click on a "button" to accept the order. If the button is clicked, the user is then thanked for his order.

     5. I fully intended to submit my rebate forms, as I had done in the past. However, since CyberRebate filed for bankruptcy several days after my order was placed, I had no opportunity to do so.

     6. The merchandise I purchased was sold at grossly excessive prices (up to ten times retail price). Had it not been for the promise of the 100% rebate, combined with my experience with this merchant in the past in which it honored all rebates, I would never have purchased the merchandise.

     I SOLEMNLY AFFIRM UNDER THE PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE.


/s/_____
Timothy Moynihan

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| TIMOTHY MOYNIHAN | * | |
| Plaintiff | * | |
| v. | * | |
| PROVIDIAN FINANCIAL CORP. | * | Civil Action No. JFM-02-CV-2795 |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Upon consideration of the cross motions for summary judgment filed by the parties, and it appearing that there are no genuine disputes of fact, it is hereby ORDERED that plaintiff is entitled to judgment as a matter of law under 15 USC § 1666i, and he is awarded damages of $1,499.83 against the defendant.

_____
United States District Court Judge

cc:
```
    Darren Margolis
    Bierer & Margolis, P.A.
    926 St. Paul Street
    Baltimore, MD 21202

    J. Preston Turner
    Pope & Hughes
    29 W. Susquehanna Avenue Suite 110
    Towson, MD 21204
```